AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

DISTRICT OF DELAWARE

In the Matter of the Search of
(Address or brief description of property or premises to be seized)

$8,351 in U.S. Currency

**APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT**

Case Number: 06- 79 M

I, __James J. Danz_____ being duly sworn depose and say: I am a(n)

<u>Postal Inspector, U.S. Postal Inspection Service,</u> and have reason to believe that in the District of Delaware there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

$8,351 in U.S. Currency

which is (state one or more bases for seizure under the United States Code)

proceeds traceable to a violation of 18 U.S.C. § 1344 and, therefore, is subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984.

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

**SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof.   X   Yes   ___ No

Signature of Affiant
James J. Danz
Postal Inspector
U.S. Postal Inspection Service

FILED
JUN 27 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Sworn to before me, and subscribed in my presence

June 27, 2006                                    at      Wilmington, Delaware
Date                                                        City and State

Honorable ~~Mary Pat Thynge~~ Gregory M. Sleet
United States ~~Magistrate Judge~~ District Judge
District of Delaware
Name and Title of Judicial Officer                Signature of Judicial Officer

**AFFIDAVIT OF JAMES J. DANZ**

I, James J. Danz, a United States Postal Inspector, being duly sworn, depose and state:

1. I am employed as a United States Postal Inspector and have been since September 1995. I am currently assigned to the Philadelphia Division, Wilmington, Delaware Domicile. My duties as a Postal Inspector are to investigate criminal violations of the United States Code, particularly the sections of Title 18 which constitute Mail Fraud and Identity Theft.

2. This affidavit is submitted in support of application for a warrant authorizing the seizure of $8,351 in U. S. currency.

3. On April 11, 2006, based on applications and affidavits showing facts that supported a finding that Richard Yaw Adjei had engaged in a fraudulent tax refund scheme, United States District Court Judge Kent A. Jordan authorized the arrest of Adjei and a search of Adjei's residence. A copy of the affidavit submitted in support of the Criminal Complaint is attached hereto as Exhibit A and incorporated herein by reference.

4. On April 13, 2006, your affiant, along with agents from IRS-CID, Social Security Administration-Office of Inspector General, U. S. Postal Inspectors, and the Delaware State Police executed the federal search warrant on Adjei's residence in Bear, DE. During the search, we recovered numerous documents related to Adjei's fraudulent tax refund scheme, including records containing victims' personal information, copies of tax refund checks generated as a result of the scheme, and $8,351 in U. S. currency.

5. On May 11, 2006, the grand jury for the District of Delaware handed down a four count indictment charging Adjei with bank fraud in violation of 18 U.S.C. § 1344, aggravated identity theft in violation of 18 U.S.C. § 1028A, engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, and fraudulent use of a social security number in violation of 42 U.S.C. § 408(a)(7)(B).

6. For several months prior to the indictment, IRS Special Agent Antonino Lo Piccolo and I had been investigating Richard Yaw Adjei. The investigation revealed that between January and March 2006, the IRS received 120 returns seeking a total of at least $347,145 in fraudulent refunds from an electronic returns originator ("ERO") named Auskwat Services. Adjei used the electronic filing identification number ("EFIN") assigned to Auskwat Services and a computer to electronically file the fraudulent returns with the IRS. Adjei used these fraudulent refund claims to secure refund anticipation loans (hereinafter "RALs") from HSBC Bank, JP Morgan Chase (Bank One), and Santa Barbara Bank & Trust (SBB&T), federally insured financial institutions. Adjei deposited loan proceeds in the form of cashier's checks into three bank accounts under his control. Adjei also made cash withdrawals at ATM machines using stored value cards which were loaded with RAL funds by HSBC as a result of fraudulent returns filed by Adjei.

7. Adjei transferred much of the proceeds of his fraudulent refund scheme into cash. For instance, a review of records received from HSBC shows that between January 10th, 2006, and March 6th, 2006, HSBC received sixty-six returns and corresponding RAL applications from Adjei, acting as Auskwat Services. The total refunds sought amounted to $183,051. HSBC relied on the returns to approve twenty-one RALs in the form of stored value cards and twenty-six RALs in the form of cashier's checks. The remaining nineteen loans were cancelled by HSBC prior to being approved for release due to suspicions of fraud.

8. On 01/12/2006 and 02/13/2006, HSBC mailed the twenty-one stored value cards to Auskwat Services at 220 N. Antlers Place, Bear, DE 19701, Adjei's residence. These cards were loaded with RAL funds totaling $53,189.15. HSBC provided a detailed transaction history showing the usage of each card which showed that, between the time HSBC sent the cards and mid-March 2006, fifteen cards were used to withdraw cash from ATMs at locations in New Castle County, Delaware, five other cards were used to withdraw cash from ATMs at locations in the Bronx, New York, and the remaining card had not been used.

9. Eight of the stored value cards that were issued by HSBC to Auskwat Services for the purpose of making loan payments to taxpayers were used at Wilmington Trust ATMs according to transaction histories provided by HSBC. I reviewed bank surveillance photographs supplied by Wilmington Trust which capture transactions involving the use of seven of these cards, as confirmed by HSBC records, and believe that each photograph depicts Adjei using the stored value cards at ATMs to receive cash.

10. Similarly, during the relevant time period, Adjei made many cash withdrawals from accounts under his control into which he had deposited proceeds of his fraudulent refund scheme. Adjei held, in his own name, a checking and savings account at WSFS Bank. An analysis of records pertaining to Adjei's WSFS Bank accounts shows that between November 9, 2005, when he opened the WSFS Bank accounts, and March 3, 2006, the date WSFS Bank froze the accounts based on a suspicion of fraud, $68,400 in fraudulent proceeds was deposited. During that same period of time, there were cash withdrawals taken via ATMs and/or check and/or debit memos totaling $37,180.

11. Adjei also held, in his own name, a checking and savings account at Wilmington Trust Company (WTC). An analysis of records pertaining to the WTC accounts shows that between February 9, 2006, and March 3, 2006, at least $17,008.05 in fraudulent proceeds was deposited into the accounts. Between February 13, 2006, and March 13, 2006, there were cash withdrawals taken via ATM and/or check totaling $10,100. I reviewed bank surveillance photographs supplied by WTC which capture Adjei cashing two checks, one for $3,500, the other for $4,000, written off his WTC checking account and made payable to himself.

12. An analysis of Adjei's checking account at WSFS Bank revealed that Adjei held legitimate employment during the relevant time period and that his pay was direct

deposited into his WSFS account. Thus, he was not paid in cash. Those direct deposits totaled only $6,302.86 (in contrast to the more than $47,000 in cash withdrawals he took during the same time period). Pursuant to 18 U.S.C. § 984(a)(1)(A) and (B), "In any forfeiture action in rem in which the subject property is cash. . . it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and . . . it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property." Thus, notwithstanding the fact that the defendant had a source of clean money during the relevant time period, the fact remains that the amount of cash found by the Government during the search of Adjei's home is greater than the amount of money the defendant earned legitimately during the relevant time period, and, by virtue of Section 984, the Government is not required to trace the proceeds dollar for dollar.

13. The $8,351 in U.S. currency found during the search of Adjei's residence is proceeds traceable to a violation of 18 U.S.C. § 1344 and, therefore, is subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984. Therefore, your affiant respectfully requests that the Court issue a warrant authorizing the seizure of the $8,351 found during the search of Adjei's residence.

James J. Danz, Postal Inspector
United States Postal Inspection Service

SWORN AND SUBSCRIBED TO THIS
__17th__ day of _June_, 2006

~~Mary Pat Thynge~~ Gregory M. Sleet
United States ~~Magistrate~~ District Judge

Exhibit A

AO 91 (Rev. 12/93) Criminal Complaint

## United States District Court

DISTRICT OF _____ DELAWARE _____

UNITED STATES OF AMERICA

v.

RICHARD ADJEI

Bear, DE 19701
(Name and Address of Defendant)

REDACTED

Criminal Complaint
Case No. 06- 43m

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or around August 2005 until the present, in New Castle County, in the District of Delaware and elsewhere defendant(s), (Track Statutory Language of Offense)

did knowingly execute and attempt to execute a scheme or artifice to obtain any of the moneys, funds, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent representations, and did, during and in relation to a felony violation of Title 18, U.S.C., § 1344, bank fraud, knowingly use, without lawful authority, the means of identification of other persons, i.e. their names and Social Security numbers,

in violation of Title ___18___ United States Code, Section(s) _1344 and 1028A_.

I further state that I am a(n) _Postal Inspector, U.S. Postal Inspection Service_ and that this complaint is based
                                       Official Title
on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   YES

_____
Signature of Complainant
James Danz
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me and subscribed in my presence,

_April 11, 2006_                       at   _Wilmington, DE_
Date                                        City and State

Honorable Kent A. Jordan
United States District Judge                _____
Name & Title of Judicial Officer             Signature of Judicial Officer

# REDACTED

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

I, James J. Danz, a United States Postal Inspector, being duly sworn, depose and state:

1. I am employed as a United States Postal Inspector and have been since September 1995. I am currently assigned to the Philadelphia Division, Wilmington, Delaware Domicile. My duties as a Postal Inspector are to investigate criminal violations of the United States Code, particularly the sections of Title 18 and Title 31 which constitute Mail Fraud and Identity Theft.

2. I have been personally involved in the investigation of Richard Yaw Adjei. Based on the information outlined in this affidavit, as well as my training and experience, and discussions with other experienced federal agents, it is your affiant's belief that Richard Yaw Adjei has violated Internal Revenue laws and committed aggravated identity theft by filing false and fictitious Federal income tax returns using the identities of other individuals without their permission, committed bank fraud by using others' identities, without their permission, to obtain refund anticipation loans, and used the U. S. Postal Service to facilitate his fraud scheme. Unless otherwise stated, the information in this affidavit is either personally known to your affiant, or has been provided by other law enforcement officers or employees of the Internal Revenue Service and/or has been learned through the review of various documentation and records more particularly described herein.

## ERO, EFIN, Transmitter, RAL, & IP Address Defined

3. E-File is the automated electronic filing system created by the Internal Revenue Service (IRS). In order to electronically file tax returns with the IRS, a return preparer must complete an application process to become an authorized electronic filer of income tax returns. The requesting party must complete and submit Form 8633, Application to Participate, in the IRS E-File Program. Upon approval of the application, the requestor becomes an Electronic Return Originator ("ERO") and is assigned an Electronic Filing Identification Number ("EFIN") which the IRS uses to identify and monitor ERO activity. With the use of a computer, tax software, and an internet connection the ERO can submit tax returns to the IRS through a "Transmitter." A Transmitter is a person or entity that transmits electronic tax return information directly to the IRS. A Transmitter sells software to EROs that enable EROs to submit returns via the Transmitter to the IRS.

4. A refund anticipation loan (RAL) is a short term loan that a financial institution extends for a fee to a person anticipating a tax refund. A person will typically apply for a RAL when filing a tax return electronically through an ERO. The person, on their tax return, directs the IRS to pay their anticipated refund over to the financial institution. The financial institution approves a loan payment to the person in the form of a check, direct deposit, or stored value card. The loan is for the amount of the refund due the taxpayer less the fees of the financial institution and the ERO. The loan payment is typically distributed to the taxpayer through the ERO (i.e. the ERO hands the taxpayer a

stored value card or cashier's check). A stored value card is loaded by the financial institution with a pre-paid amount equal to the RAL amount and can be used to make debit transactions, such as by using the card to withdraw cash from ATM machines. RALs are repaid when the IRS transfers the refund proceeds to the financial institution.

5. Each simultaneous Internet connection is assigned a unique Internet Protocol (IP) address. Ranges of IP addresses have been assigned to Internet Service Providers (ISP). When an ISP customer logs onto the Internet, a unique IP address is assigned to the customer for as long as they remain connected to the Internet. Connection Logs are kept in the normal course of business by ISPs. The Connection Logs identify the user assigned an IP address on a particular day and at a specific time. Providing the IP address, date, time, and time zone to the ISP allows for the identification of the ISP's customer.

## OVERVIEW

6. My investigation has determined that Richard Yaw Adjei, a.k.a. Johnson Agyeman, of                        has been preparing and electronically filing fraudulent Federal income tax returns using the social security numbers of other individuals without their knowledge. Between January and March 2006, the IRS received 120 returns seeking a total of at least $347,145 in fraudulent refunds from an ERO named Auskwat Services. Based on my investigation, I believe that Adjei used the EFIN assigned to Auskwat Services and a computer to electronically file fraudulent returns with the IRS. Adjei used these fraudulent refund claims to secure RALs in the names of the individuals whose names he had fraudulently used to file tax returns from HSBC Bank, JP Morgan Chase (Bank One), and Santa Barbara Bank & Trust (SBB&T), federally insured financial institutions. Adjei deposited loan proceeds, in the form of cashier's checks, to which he was not entitled, into three of his personal bank accounts. Adjei also made numerous cash withdrawals at ATM machines using stored value cards which were loaded with funds by HSBC as a result of fraudulent returns filed by Adjei.

### Analysis of Returns and Other Information Filed with IRS

7. On August 8, 2005, the IRS received a Form 8633, "Application to Participate in the IRS E-File Program", from an electronic return preparer named Auskwat Services. The application was signed by a Micah Bruce as President, and listed Bruce's address as                                    . The IRS approved the application and assigned an EFIN of 755160, thus permitting Auskwat Services to submit electronic returns to the IRS.

8. Based on information received from the IRS's Philadelphia Fraud Detection Center (FDC), Auskwat Services (EFIN 755160) filed 120 returns for the 2005 tax year. These returns were transmitted to the IRS through a transmitter called Universal Tax Systems. The total refunds claimed amounted to $347,145. Your affiant received information regarding the examination of the return information provided by the FDC which identified the following similarities:

- 114 of 120 returns included a Schedule C Profit or Loss From Business;

- Head of Household filing status was used on returns;

- Two foster children were claimed on each return;

- Earned Income Credit of at least $4,000 was claimed on each return;

- 108 of 120 returns had refund claims of between $2,700 and $2,728;

- Sixteen returns used a variation of ⸺ Bear, DE for the taxpayer's address (located in same complex as ⸺ );

- Twenty-four returns used a variation of ⸺ (plus unit#), Newark, DE for the taxpayer's address (located less than six miles from ⸺ );

- ⸺ New Castle, DE 19721 was used six times as a taxpayer address;

- Remaining taxpayer addresses were in New Castle County, DE or the Bronx, New York;

- Sixty-six taxpayers applied to HSBC for RALs;

- Thirty-two taxpayers applied to JP Morgan Chase for RALs; and

- Twenty-two taxpayers applied to SBB&T for RALs

9. Your affiant received information that on March 22, 2006, a drive by surveillance of ⸺, Bear, DE and ⸺, Newark, DE found each address to be a single-unit townhome, and not a multiunit building.

10. A representative of the United States Postal Service informed your affiant that 129 Charles Arbors Lane, New Castle, DE is not a valid address.

11. Based on public records and prior year IRS records, all taxpayers, except for three, who had tax returns filed by Auskwat Services live in Wisconsin, Illinois, South Dakota, Iowa, or Minnesota. None live in Delaware or New York.

### Taxpayer Interviews and W-2 Wage Verifications

12. Auskwat Services filed an electronic return in the name of D M with IRS and HSBC on January 16, 2006. On March 20, 2006, IRS-CI Special Agent Jesse Leming interviewed D M of Hubertus, WI. D M stated that he self-prepared his 2005 Form 1040 Individual Income Tax Return, which he filed jointly with his wife, and mailed it to

the IRS on February 7, 2006 . M    has never lived in Delaware or New York and does not have any foster children. M    has never used Auskwat Services, and has never heard of a refund anticipation loan. M    confirmed that his name and social security number were used without his permission by Auskwat Services.

13. Auskwat Services filed an electronic return in the name of J    P    with IRS and HSBC on January 16, 2006 . On March 20, 2006 , S/A Leming interviewed J    P    of Milwaukee, WI . P    stated that the same tax preparer has prepared his tax returns since approximately 1984, and that he has not yet filed his 2005 Form 1040 Individual Tax Return. P    has never lived in Delaware or New York . P    has never used the head of household filing status, has no foster children, and has never heard of Auskwat Services or of a refund anticipation loan. P    confirmed his name and social security number were used without his permission by Auskwat Services.

14. Auskwat Services filed an electronic return in the name of O    P    , Jr. with IRS and HSBC on February 4, 2006 . On March 20, 2006, S/A Leming interviewed O    P    of Milwaukee, WI . P    stated that he has lived in Wisconsin his entire life, and has no foster children. P    had his 2005 tax return prepared by a tax preparer in Milwaukee, WI during the second week of February, 2005. P    has never heard of Auskwat Services, and he has never applied for a refund anticipation loan. P    confirmed his name and social security number were used without his permission by Auskwat Services.

15. Auskwat Services filed an electronic return in the name of J    O    with IRS and HSBC on January 15, 2006 . On March 21, 2006, J    O    informed S/A Leming that his wife, J    O    , had died on December 24, 2005.

16. S/A Leming interviewed six other taxpayers whose names and social security numbers were used by Auskwat Services to file returns with IRS and HSBC. All six taxpayers stated that they have no foster children, have never heard of Auskwat Services, and that their personal information was used without their permission.

17. Auskwat Services included Wage and Earning Statement (Form W-2) information on returns filed for six taxpayers. The W-2s reflected wages allegedly received by these taxpayers from employers with New York addresses. Each alleged employer was asked by IRS personnel to verify the employment of the taxpayer who, according to the W-2s filed by Auskwat Services, had worked for them in 2005. Five of the alleged employers responded that they possess no record of the taxpayer whose employment they were asked to verify. The sixth alleged employer has not responded as of April 10, 2006 .

### RAL Bank Records and Links to Adjei

18. EFIN 755160 was used by an ERO to enroll in HSBC Bank's RAL program. HSBC provided the following information relative to this EFIN:

- Owner's Name & Address: Mike Bruce,           Pkwy Dallas, TX 75287;

- Business Name: Auskwat Services;

- Address:                , Bear, DE 19701;

- Phone: (917) 250-   ;

- Fax: (302) 838-   ;

- Email address: kelvinatorj@aol.com;

- Bank Account: Wilmington Savings Fund Society #      ; and

- Name on Account: Richard Adjei.

19. On March 20, 2006, a representative of the United States Postal Service informed your affiant that Richard Adjei is receiving mail at            , Bear, DE 19701.

20. Your affiant searched AT&T's AnyWho Internet Directory Assistance and found a listing for phone number (302) 838-    at            , DE 19701.

21. Adjei's Delaware Driver's License issued on 10/05/2005 shows Adjei's address to be            , Bear, DE 19701. According to DE Department of Motor Vehicles records, Adjei registered a 1993 GEO Prizm with tag number       on 01/20/2006.

22. Your affiant received information that on March 10, 2006, a drive by surveillance of           revealed that a GEO Prizm with tag number     was parked outside. Your affiant also received information that on March 16 at 8:50 PM, and on March 17 at 6:50 AM, the GEO Prizm bearing tag number     was parked outside           . Adjei's residence is a single-unit townhouse located in a complex called           .

23. Your affiant was advised through an HSBC representative that HSBC deducts the ERO's processing fees from the taxpayer's refund amount. HSBC direct deposited Auskwat Services' fees into account       at WSFS.

24. A WSFS representative verified that account       is held in the name of Richard Yaw Adjei. WSFS records list Adjei's address as           , Bear, DE 19701, and his phone number as (302) 838-  .

25. Between January 10, 2006, and March 6, 2006, HSBC received sixty-six returns and corresponding RAL applications from Auskwat Services. The total refunds sought amounted to $183,051. HSBC relied on the returns to approve twenty-one RALs in the form of stored value cards and twenty-six RALs in the form of cashier's checks. The remaining nineteen loans were cancelled by HSBC prior to being approved for release

due to suspicions of fraud.

26. On January 12, 2006, and February 13, 2006, HSBC mailed stored valued cards to Auskwat Services at            , Bear, DE 19701. Twenty-one of these cards were loaded with RAL funds. HSBC provided a detailed transaction history showing the usage of each card. An IRS special agent examined the transaction detail and found that fifteen cards were used to withdraw cash from ATMs at locations in New Castle County, Delaware. Five other cards were used to withdraw cash from ATMs at locations in the Bronx, New York, and the remaining card has not been used as of March 17, 2006. None of the taxpayers who should have received these cards live in Delaware or New York.

27. Between January 13, 2006, and February 4, 2006, JP Morgan Chase (Bank One) received thirty-two returns sent by Auskwat Services using EFIN 755160. The total amount of refunds claimed on these returns amounted to $87,046. JP Morgan (Bank One) allowed Auskwat Services to print Bank One cashier's checks for payment of RALs. Auskwat Services' processing fees were direct deposited to WSFS account number       , held in the name of Richard Yaw Adjei.

28. Between January 19 and January 21, 2006, SBB&T received twenty-two returns from EFIN 755160. SBB&T records reflect the following information pertaining to this EFIN:

- Owner: Mike Bruce;

- Name: Auskwat Services;

- Address:            ;

- Phone: (917) 250-    ; and

- Bank Account:        (routing # belonging to WSFS)    .

29. A SBB&T representative advised your affiant that on December 27, 2005, SBB&T mailed thirteen packages containing blank check stock to            . SBB&T authorized Auskwat Services to print nineteen SBB&T cashier's checks based on returns filed by Auskwat Services and accepted by the IRS. As of March 28, 2006, three additional checks were on hold pending notification of acceptance of the related tax returns by the IRS.

30. A Wilmington Trust representative advised that a SBB&T cashier's check was deposited into a bank account belonging to Richard Yaw Adjei. During the investigation, we received photographs taken from Wilmington Trust bank surveillance film, and compared these photographs to Adjei's DE Driver's License photo. I have been advised that Richard Adeji is the person photographed depositing the SBB&T cashier's check into his account. Wilmington Trust records list Adjei's social security number

(SSN) as              and his date of birth as              .

### PRIOR NAME AND EFIN #

31. On April 5, 2006, a representative of the Social Security Administration, Office of Inspector General, informed your affiant that SSN        was issued to a Johnson Agyeman on 10/07/1997. The SSA OIG representative also reported that a name change from Agyeman to Richard Yaw Adjei was filed on 10/24/2005.

32. A search for the SSN and date of birth combination of         and        on a law enforcement database returned a New York State driver's license and a New York City Police Department record under the name Johnson Agyeman. Your affiant was advised that the above documents appear to depict the same man who is pictured in Adjei's DE driver's license photograph. His NY driver's license lists Agyeman's address as              , Bronx, NY 10457 .

33. A search of IRS EFIN records for SSN         revealed that EFIN 130168 was issued to a Johnson Agyeman in November of 2003. The application (Form 8633) for this EFIN lists the following information:

- SSN:          ;

- Name: Rydex Ventures;

- Business Location:            Bronx, NY 10453 ;

- Business Telephone: (718) 731-     ; and

- Primary contact: Johnson Agyeman.

34. Your affiant learned that a representative of IRS' Philadelphia Fraud Detection Center (FDC) advised that Rydex Ventures filed 184 returns for the 2004 tax year. The total refunds claimed amounted to $566,416. Your affiant received information regarding the examination of the above mentioned returns, which revealed that most returns included a Schedule C Profit or Loss From Business and that two dependents were claimed on each return. The FDC further advised that some of the dependents claimed are deceased. These returns were identified as a possible fraud scheme by the IRS' Fraud Detection Center in New York .

### Bank Deposits and ATM Withdrawals Using Stored Value Cards

35. On January 18, 2006, an HSBC cashier's check payable to D    C    was deposited into an account belonging to Adjei at an ATM located at WSFS' Fox Run Branch (located in Bear, DE). This same ATM was used to deposit a Bank One cashier's check payable to Z    O on February 27, 2006, and a Bank One cashier's check payable to R    K    on March 3, 2006 . WSFS determined these checks to be

related to Refund Anticipation Loans based on verbiage, which appears to be a RAL agreement, stamped on the back of each check. WSFS reviewed Adjei's account activity and noted multiple wire transfers into his savings account (number 497145860), which reference "Tax Fin Services Fee Payment", "Tax Refund RAL Dept", or "RAL Tax Fee".

36. JP Morgan Chase (Bank One) confirmed that it had received returns for Z    O      and R    K    from Auskwat Services. Further, JP Morgan Chase confirmed that the cashier's checks payable to O    and K   , and deposited into Adjei's account, represent RALs authorized based on the returns received from Auskwat Services. HSBC advised that the cashier's check payable to D    C    represents RAL proceeds and that it was released based on a return filed by Auskwat Services. Based on IRS and public records, O , K  , and C     are residents of Wisconsin, although the returns filed by Auskwat Services show a New York or Delaware address for each of them. JP Morgan Chase and HSBC also confirmed that they have made multiple transfers to Adjei's WSFS savings account (number         ) relating to RALs.

37. Your affiant received information that on March 10, 2006, a WSFS representative was contacted regarding conversations he/she had with Adjei. The WSFS representative advised that WSFS had placed a hold on money in Adjei's account after reviewing his account activity and finding cashier's checks payable to D    C   , Z    O , and R    K . On March 10, 2006 , WSFS notified Adjei of the hold by telephone, and further advised him that it would remain in effect until he submitted a written and notarized statement signed by O , K  , and C     stating that Adjei is permitted to negotiate their checks. According to the WSFS representative, Adjei agreed to obtain the statements, however, as of April 10, 2006, he has not provided WSFS with these statements. Adjei also told the WSFS representative that he and a friend prepare tax returns in New York City for people that he knows. He further explained that he is depositing the checks from O , K  , and C     because he pays his tax return preparation clients their RALs in cash, and, in return, he keeps their cashier's checks.

38. WSFS records list Adjei's address as              , Bear, DE 19701 and his home phone number as (302) 838-     . WSFS records also list Adjei's social security number as         and his date of birth as         .

39. On April 16, 2004, a business checking account was opened under the name Rydex Ventures at a Commerce Bank branch in New York City. Johnson Agyeman, SSN        , is the authorized signer on the account. Commerce lists Rydex's address as              , Bronx, 10457 . This address also appears on Agyeman's New York Driver's License.

40. Commerce Bank reported that, between February 17, 2006, and February 21, 2006, eight cashier's checks were deposited into the Rydex Ventures account using an ATM machine located at a Commerce branch in Bear, DE, and one cashier's check was deposited into the Rydex Ventures account using an ATM located at a Commerce branch off of Limestone Road in DE. These nine cashier's checks range from $2,315 to

$2,406 and in aggregate total $21,290.40. Four of these checks are HSBC checks and the other five are Bank One checks. All are made payable to individuals other than Johnson Agyeman. Your affiant learned that a comparison of the four HSBC cashier's checks obtained from Commerce Bank to a summary of RALs processed by HSBC determined that HSBC released these checks based on returns filed by Auskwat Services. Your affiant also learned that a comparison of the five Bank One cashier's checks obtained from Commerce Bank to a summary of RALs processed by Bank One revealed these checks were also processed based on returns filed by Auskwat Services. A special agent who viewed photographs of the aforementioned deposits taken from bank surveillance film, and compared the bank photos to Adjei's Delaware Driver's License photograph and to the photograph of Johnson Agyeman provided by the New York Police Department, and, it is that agent's opinion that Adjei deposited six of these cashier's checks. The remaining checks were deposited by an unidentified female.

41. Your affiant was advised that a review of Commerce Bank records relating to the Rydex Ventures account at Commerce Bank revealed two SBB&T cashier's checks in the amount of $4,372.05 and $5,111.05. The cashier's checks are payable to taxpayers whose information was used by Auskwat Services to file returns with the IRS and SBB&T. Both of these checks were deposited on February 7, 2006, using an ATM machine located at a Commerce branch in Bear, DE. A special agent involved in this investigation viewed photographs of these deposits as well as photographs of other deposits into the Rydex Ventures account and photographs of deposits into Adjei's account at Wilmington Trust, and believes that Adjei also deposited the two SBB&T cashier's checks on February 7, 2006.

42. Your affiant was advised that a review of Commerce Bank records relating to the Rydex Ventures account identified five checks, totaling $30,455, drawn on the account, and made payable to Richard Adjei. Four of these checks were deposited into Adjei's account at WSFS. The other check was deposited into a Wilmington Trust account belonging to Adjei. A special agent involved in this investigation viewed photographs taken from Wilmington Trust bank surveillance film and believes that Richard Adjei is the person photographed depositing the check drawn on the Rydex Venture account into Adjei's account at Wilmington Trust.

43. Eight of the aforementioned stored value cards that were issued by HSBC to Auskwat Services for the purpose of making loan payments to taxpayers, were used at ATMs located at Wilmington Trust branches. A special agent involved in this investigation reviewed photographs taken from bank surveillance film supplied by Wilmington Trust which capture transactions involving the use of seven of these cards, as confirmed by HSBC records, and believes that they depict Adjei withdrawing cash from the ATMs.

### Universal Tax Systems, Inc. (UTS) and America Online (AOL)

44. Your affiant was advised that a UTS representative provided federal agents with

the following information relative to EFIN 755160:

- Name: Auskwat Services;

- Address:                    , Bear, DE 19701;

- Phone: (917) 250-   ;

- Fax: (302) 838-   ; and

- Email address: kelvinatorj@aol.com

45. A UTS representative advised federal agents that UTS sells a software package called TaxWise which enables ERO's to transmit tax return information through UTS to the IRS and financial institutions. According to UTS records, Auskwat Services purchased TaxWise from UTS on November 28, 2005, for $1,034. UTS shipped the software to            , Bear, DE 19701. Commerce Bank records pertaining to the account of Rydex Ventures show a debit card purchase from UTS on November 28, 2005, for $1,034.

46. UTS confirmed that Auskwat Services was assigned the following IP addresses while accessing the UTS server:

- 171.161.154.18 on 03/30/2006 at 11:48 PM EST (session continued into 03/31/2006 );

- 172.139.11.69 on 03/27/2006 at 12:15 PM EST;

- 172.163.240.147 on 03/26/2006 at 3:20 AM EST

47. IP addresses that begin in 171 or 172 have been assigned to America Online (AOL). AOL provided records which identify the AOL service subscriber assigned the IP addresses above, on the day and times listed above, as Mike Johnson. The AOL records also indicate that (302) 838-    was the telephone line that the subscriber used to connect to the Internet during the sessions listed above. The service address of this telephone line is            , Bear, DE 19701. Therefore, while connecting to the Internet and accessing the UTS server, the AOL subscriber was physically located at         , Bear, DE 19701. In addition, AOL provided the following subscriber information relating to the account of Mike Johnson:

- Address:              , Bronx, NY 10457;

- Phone: (718) 731-   ;

- Screen Name: kelvinatorj;

- Credit Card number:        9426; and

- AOL member since 11/30/2005.

    Avenue is also the address which appears on Johnson Agyeman's New York driver's license. Commerce Bank verified that        9426 is the number of a debit card linked to the account of Rydex Ventures.

48. Your affiant was advised that checks made payable to         , the community in which                  is located, were found during a review of Adjei's Wilmington Trust and WSFS checking account records. These checks bear notations indicating that they relate to the rental of           . On April 7, 2006, a representative of Delmarva Power confirmed that power was being provided to           , Bear, DE 19701, in the name of Richard Yaw Adjei.

## CONCLUSIONS

49. Your affiant believes that Richard Adjei enrolled with the Internal Revenue Service as an ERO for the 2005 tax season for the sole purpose of filing false refund claims with the IRS. All returns submitted to the IRS by Auskwat Services appear to be fraudulent. Adjei used the fraudulent refund claims to obtain refund anticipation loans from HSBC, Bank One, and SBB&T, federally insured financial institutions. He then deposited the RAL proceeds into bank accounts he controls at WSFS, Wilmington Trust, and Commerce Bank.

50. It is your affiant's belief that Adjei applied to be an ERO using another person's name or had this person obtain an EFIN on his behalf to obscure his responsibility for returns filed by Auskwat Services. However, as Adjei's personal address is the same as Auskwat's Services business address, as mailings of blank checks and stored value cards were sent to Adjei's residence and used to pay RALs, and as Adjei controlled the proceeds of the fraudulently obtained refund loans, it is your affiant's believe that Adjei is filing fraudulent returns under the name Auskwat Services. Further, evidence was obtained from Universal Tax Systems and America Online which show that Auskwat Services was operating from Adjei's residence at            , Bear, DE 19701.

51. Adjei wrongfully used the social security numbers of at least 120 taxpayers to prepare and electronically file at least 120 false federal tax returns and claims for refunds from the Internal Revenue Service which total at least $347,145. The evidence gathered to date shows that Adjei filed returns with bogus addresses and return information to generate claims for refunds. He sought to access the refunds by obtaining refund anticipation loans (in the names of the persons whose identities he had stolen) from HSBC Bank, JP Morgan Chase (Bank One), and SBB&T in the form of stored value cards and cashier's checks. HSBC sent stored value cards to Adjei's residence - 220 N. Antlers Place, Bear, DE. These cards were later used at ATMs in areas where Adjei currently lives (New Castle County, Delaware) and lived previously (Bronx, New York ). Photographs obtained from bank film show a person believed to be

Adjei making cash withdrawals from ATM machines at Wilmington Trust branches on dates and times that correspond to the transaction history of the cards provided by HSBC.

52. Wherefore, based on information contained in this affidavit, your affiant submits that there is probable cause to believe that Richard Yaw Adjei committed bank fraud in violation of 18 U.S.C. § 1344 and aggravated identity theft in violation of 18 U.S.C. § 1028A, and respectfully requests that a warrant be issued for his arrest.

                                                        James Danz
                                                        Postal Inspector
                                                        United States Postal Inspection Service